UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| United States of America, | File No. 21-cr-38 (ECT/LIB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| John Thomas Paciorek, | |
| Defendant. | |

_____

Evan Gilead, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

John C. Brink, Minneapolis, MN, for Defendant John Thomas Paciorek.

_____

Defendant John Thomas Paciorek is charged with the armed robbery of the Deerwood Bank in Garrison, Minnesota.  ECF No. 1.  He has moved to suppress evidence seized under several search warrants, ECF No. 25, as well as certain statements that he made while in custody, ECF No. 26.  In a Report and Recommendation ("R&R"), Magistrate Judge Leo I. Brisbois concluded that both motions should be denied.  R&R at 31 [ECF No. 43].  Paciorek filed objections to the R&R, and the Government filed a response.  ECF Nos. 44, 45.  Because Paciorek has objected, the R&R will be reviewed de novo.  *See* 28 U.S.C. § 636(b)(1); Local Rule 72.2(b)(3).  Based on that review, the R&R will be accepted.

I

In his first motion, Paciorek challenges the legal sufficiency of four search warrants issued during the investigation of the Deerwood Bank robbery.[1]  The warrants will be addressed in chronological order of issuance.  Because the R&R contains a thorough summary of the factual background and no Party has challenged the accuracy of that account, the relevant facts will be incorporated into the analysis below.

A

The first search warrant, issued by Judge Chuck Halverson of the Ninth Judicial District Court in Crow Wing County, Minnesota, authorized law enforcement to obtain location data and other records for a Verizon cell phone number ending in -0377.  *See* Gov't Ex. 4 at 9–10.  Magistrate Judge Brisbois concluded that Paciorek lacks standing to challenge this warrant because he has not established a legitimate expectation of privacy in the relevant cell-phone records.  R&R at 12–15.

"Fourth Amendment rights are personal . . . [and] may not be vicariously asserted." *United States v. Douglas*, 744 F.3d 1065, 1071 (8th Cir. 2014) (citation omitted).  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  *Id.* (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)).  To establish standing, a defendant has the burden to show "a

---

[1]     There was a fifth search warrant, which was admitted as Government Exhibit 5.  At the hearing on Paciorek's motion, the Government stated that it could not locate the application for that warrant and accordingly would not use evidence obtained under the warrant for any purpose.  *See* R&R at 11 n.7; Tr. of Hrg. on Mot. to Suppress ("Tr.") at 34–37 [ECF No. 38].

2

legitimate expectation of privacy in the area searched or the item seized." *United States v. Bettis*, 946 F.3d 1024, 1027 (8th Cir. 2020) (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

> Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case.

*United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000) (citation omitted); *see United States v. Muhammad*, 58 F.3d 353, 355 (8th Cir. 1995) (per curiam).

Paciorek has not shown that he has standing to challenge the warrant seeking records related to the -0377 Verizon number. Nothing in the warrant affidavit indicates that Paciorek had ownership or control over the number, that he ever used it, or that he could regulate others' use of it. On the contrary, the facts in the affidavit all tie the number to a different individual: James Richard Ardito.[2] According to the affiant, surveillance cameras at the bank captured a suspect in the robbery. Gov't Ex. 4 at 6. The suspect's appearance on that footage was consistent with Ardito's driver's license photo, and multiple individuals familiar with Ardito believed it was him. *Id.* at 6–7. One of those individuals—described as "an associate of" Ardito—reported that he or she had received a call from Ardito at the -0377 Verizon number, that Ardito had given the number out as a way to reach him, and that Ardito answered when the number was called. *Id.* at 7. Paciorek's

---

[2]    Ardito separately pleaded guilty to aiding and abetting the robbery of the Deerwood Bank. *See United States v. Ardito*, No. 20-cr-298 (ECT) (D. Minn.), ECF Nos. 16, 18.

3

name does not come up. Indeed, besides stating that the phone records "may assist in the identification of" the individual driving Ardito's getaway car, *id.*, the affidavit does not mention any other targets of the investigation at all.

In his objections, Paciorek asserts that he "has a constitutionally protected privacy interest in the records of the third-party holders of those records sought by" the Verizon warrant. Def.'s Objs. at 4 [ECF No. 44]. For support, he cites *Carpenter v. United States*, in which the Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information]." 138 S. Ct. 2206, 2217 (2018). *Carpenter* does not support Paciorek's position. Nothing in that case suggests that an individual has standing to challenge a search of someone else's cell-phone records. *See United States v. Beverly*, 943 F.3d 225, 238 (5th Cir. 2019).

B

The second challenged warrant was issued by Judge Bethany Fountain Lindberg of the Tenth Judicial District Court in Anoka County, Minnesota. It authorized law enforcement to search Ardito's person, a residence in Andover, Minnesota, and "[a] white Cadillac motor vehicle, unknown license plate." Gov't Ex. 7 at 1. Paciorek only challenges the search of the "white Cadillac." *See* Def.'s Mem. in Supp. at 3 [ECF No. 41]; Def.'s Objs. at 4; R&R at 15. He argues that, because the warrant did not provide the vehicle's license plate number or other formal identifying information, it violated the Fourth Amendment's requirement that a warrant "particularly describ[e]" the property to be seized. U.S. Const. amend. IV; *see* Def.'s Objs. at 4. Magistrate Judge Brisbois concluded

that the warrant had sufficient particularity and that, even if it didn't, the resulting evidence would be admissible under the good-faith exception to the exclusionary rule. R&R at 15–19.

To satisfy the Fourth Amendment's particularity requirement, a warrant must be "sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (citation omitted). This is a standard "of practical accuracy rather than of hypertechnicality," and the degree of specificity required "depend[s] on the circumstances of the case and on the type of items involved." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014) (internal quotation marks and citations omitted). Normally, it is the warrant itself that must be sufficiently particular, "not supporting documents like an application or affidavit." *Id.* at 923–24. But "if the affidavit is incorporated into the warrant, it may cure the particularity defect of the warrant if the affidavit accompanies the warrant and the warrant uses suitable words of reference to incorporate the affidavit." *United States v. Thomas*, 263 F.3d 805, 808 (8th Cir. 2001).

First, as Magistrate Judge Brisbois concluded, it is appropriate to consider the warrant together with its supporting affidavit because the record seems to show they were "executed as a whole." R&R at 16. The documents are attached to one another, and the warrant twice references the supporting application. Gov't Ex. 7 at 11–12. Paciorek does not argue otherwise in his original brief or in his objections to the R&R.

Second, considered alongside the incorporated affidavit, the warrant describes the Cadillac with sufficient particularity. There is no general requirement that a warrant to

5

search a car provide the car's license plate number, even if it is often helpful to do so. "[T]here are many descriptive facts which can be given" about a car, and "[a] few" of them—for instance, the make, the color, and the operator—will ordinarily suffice. 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.4(e) (4th ed. Dec. 2020 Update); *cf. United States v. Ross*, No. CR17-4071-LTS, 2018 WL 1911344, at *6–7 (N.D. Iowa Apr. 23, 2018) (upholding a warrant that provided the wrong license plate number for the vehicle sought). The affidavit states that surveillance footage at the Deerwood Bank captured the robbery suspect, later identified as Ardito, getting into a "white sedan, resembling a Cadillac." Gov't Ex. 7 at 3. The affiant spoke with an individual who used to live with Paciorek and who reported that Paciorek "own[ed] a Cadillac" that was "pearl white and square in the back" but that he "didn't register it yet and it was under someone else's name." *Id.* at 4. According to the same individual, Paciorek said that "Jim"—who the affiant apparently understood to be Ardito—"took his car" and "robbed a bank and that everyone was looking for him." *Id.* Further investigation revealed that Paciorek had stayed at a hotel in Elk River, Minnesota the night before the robbery and that a Cadillac had been associated with the room reservation. *Id.* at 7. By providing the car's make, color, and owner, tying it to the robbery, and explaining that Paciorek had not yet registered the car in his name, the warrant gave executing officers enough information to identify the car under all the circumstances.

Either way, the seized evidence would be admissible under the good-faith exception to the exclusionary rule. This exception applies "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its

6

scope[.]" *United States v. Rodriguez*, 834 F.3d 937, 941 (8th Cir. 2016) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)).  As relevant here, the good-faith exception does not apply if "the warrant was so facially deficient that the executing officer could not reasonably presume its validity." *United States v. Notman*, 831 F.3d 1084, 1089 (8th Cir. 2016) (internal quotation marks and citation omitted).  For the same reasons stated above, a reasonable officer with knowledge of the investigation could believe that the warrant provided enough information to identify the correct Cadillac.  *See United States v. Fiorito*, 640 F.3d 338, 347 n.4 (8th Cir. 2011).

C

The third search warrant, issued by Judge Halverson, authorized law enforcement to obtain records related to a Sprint cell phone number ending in -8904.  Gov't Ex. 2 at 1.  According to Paciorek, evidence obtained under this warrant should be excluded because the warrant was not supported by probable cause.  Def.'s Objs. at 1–3.  Magistrate Judge Brisbois disagreed, concluding that the warrant affidavit supplied probable cause and that the evidence would be admissible anyway under the good-faith exception.  R&R at 20–23.

A warrant affidavit[3] "establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Brewer*, 588 F.3d 1165, 1170 (8th Cir. 2009) (internal quotation marks and citations

---

[3]   Where, as here, the issuing judge "relie[s] solely upon a supporting affidavit," a reviewing court considers "only that information which is found within the four corners of the affidavit . . . in determining the existence of probable cause." *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020) (citation omitted).

7

omitted). A judge considering whether to issue a warrant "may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists[.]" *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). A court reviewing the decision later must "pay great deference to the probable cause determinations of the issuing judge or magistrate," limiting its inquiry "to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed." *United States v. Daigle*, 947 F.3d 1076, 1081 (8th Cir. 2020) (internal quotation marks and citations omitted).

    Magistrate Judge Brisbois correctly concluded that Judge Halverson had a substantial basis to find probable cause. First, the warrant affidavit recounted in detail the robbery of the Deerwood Bank and Ardito's suspected connection to it. This included the statements, described in Part A, that tie Ardito to the -0377 Verizon number, as well as an admission from Ardito that the -0377 Verizon number was his. Gov't Ex. 2 at 7. Second, Ardito's cell-phone data, which law enforcement had obtained by that point, showed a contact named "John" with the -8904 number, and that Ardito's number had communicated with the Sprint number "in excess of 100 times," including "during the time before and immediately following the bank robbery." *Id.* at 8–9. Third, an individual described as "an associate of John Paciorek" reported receiving a message from Paciorek at the -8904 Sprint number. *Id.* at 8. The individual interpreted the message as a threat meant to dissuade the individual from "speaking to law enforcement." *Id.* Finally, the affiant reported that Paciorek's name was on the Elk River hotel reservation in the days leading up to the robbery and that hotel surveillance footage had captured two men together at the hotel—one of whom bore "a strong resemblance to" Ardito. *Id.* at 8. These facts,

considered together, create a fair probability that records for the -8904 Sprint number would reveal evidence of criminal activity.[4]

D

The fourth and final search warrant, also issued by Judge Halverson, authorized law enforcement to search a Motorola cell phone taken from Paciorek's person when he was arrested. Gov't Ex. 3. Paciorek argues that this warrant "suffers from all the infirmities of" the Sprint warrant. Def.'s Objs. at 3. Again, Magistrate Judge Brisbois disagreed, concluding that the warrant was supported by probable cause and, alternatively, that the evidence would be admissible under the good-faith exception. R&R at 23–27.

Judge Halverson also had a substantial basis to find this warrant supported by probable cause. The affidavit contained essentially the same information described above. It recounted the bank robbery in detail, connected Ardito to it, and drew a connection between Ardito and Paciorek. Gov't Ex. 3 at 2–4. It noted again that Ardito's phone records showed numerous communications between Ardito's number and the -8904 Sprint number associated with Paciorek. *Id.* at 5. On top of this, the affiant reported that Paciorek had since been arrested in connection with the robbery and that a black Motorola cell phone had been "taken from his person upon arrest." *Id.* And, based on the affiant's training and experience, "individuals involved in criminal activity, including aggravated robbery, utilize their cellular telephones in furtherance of [that] activity," which suggests that the phone would contain valuable evidence in the form of "messages and call records,

---

[4]   For the same reasons, a reasonable officer could believe that the warrant was supported by probable cause, so the resulting evidence would be admissible anyway under the good-faith exception. *See Leon*, 468 U.S. at 922–23.

photographs and social media postings, [and] physical location data of the device." *Id.* This was enough to show a fair probability that the Motorola phone would contain evidence of criminal activity.

## II

Paciorek's motion to suppress statements arises from an interview he gave in the Crow Wing County Jail on August 18, 2020, after his arrest. The interview was recorded, and the recording has been admitted into the record. *See* Gov't Ex. 1.

The scope of this motion is narrow. At the hearing on the motion, the Government represented that it would not use any part of Paciorek's in-custody statement in its case-in-chief, implicitly recognizing doubt as to whether Paciorek had been advised of his *Miranda* rights. Tr. at 11–12; *see Miranda v. Arizona*, 384 U.S. 436 (1966). It reserved the right, however, to use the statement for impeachment purposes if Paciorek chooses to testify at trial. Tr. at 12; *see Harris v. New York*, 401 U.S. 222, 225–26 (1971) (explaining that a statement obtained in violation of *Miranda* can be used for this purpose). Paciorek nonetheless persisted in the motion to suppress, arguing that the statement could not be used for any purpose at trial because it was constitutionally involuntary. *See Michigan v. Harvey*, 494 U.S. 344, 351 (1990) (explaining that an involuntary statement is not admissible for any purpose). Magistrate Judge Brisbois concluded that the statement was voluntary and recommended denying the motion. R&R at 29–31.

"A statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne[.]" *United States v. Jimenez*, 478 F.3d 929, 932–33 (8th Cir. 2007) (citation omitted). In other words, police may not "extract[]" a statement "by

threats, violence, or direct or implied promises, such that the defendant's . . . capacity for self-determination [is] critically impaired." *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010) (internal quotation marks and citation omitted). Relevant factors bearing on the voluntariness of a statement include "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Id.* (citation omitted).

Considering all the circumstances, Paciorek's statement was voluntary. The interview was short: only about twenty minutes. *See United States v. Makes Room*, 49 F.3d 410, 413, 415 (8th Cir. 1995) (stating that the two-and-a-half hour duration of an interview did not suggest involuntariness). The atmosphere was not coercive. Only two officers (neither armed) were present, and Paciorek was not restrained. Tr. at 18, 21–22. Both officers maintained a calm tone of voice and did not threaten or physically intimidate Paciorek. One officer testified that Paciorek did not appear to be under the influence of alcohol or drugs. *Id.* at 20–21. The officers told him that it was his choice whether to continue speaking with them. Gov't Ex. 1 at 2:00–2:25. And when Paciorek abruptly stopped the interview and asked to be returned to his cell, the officers said "okay" and "alright" and honored the request. *Id.* at 19:20–19:35. These circumstances do not approach the point of "critically impair[ing]" Paciorek's "capacity for self-determination." *Sanchez*, 614 F.3d at 883.

Paciorek argues that his statement was involuntary because the officers did not give him proper *Miranda* warnings or provide him with counsel. Def.'s Objs. at 4–5. But these factors do not make a statement per se involuntary; rather, they are "relevant only in

11

establishing a setting in which actual coercion might have been exerted[.]" *Procunier v. Atchley*, 400 U.S. 446, 453–54 (1971); *see also* 2 LaFave, *supra*, § 6.2(c). Actual coercion did not happen here. Because Paciorek's statement was not involuntary in the constitutional sense, the Government may use it for impeachment purposes.

## ORDER

Therefore, based on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. Defendant John Thomas Paciorek's Objection to the Report and Recommendation [ECF No. 44] is **OVERRULED**;

2. The Report and Recommendation [ECF No. 43] is **ACCEPTED**;

3. Defendant's Motion to Suppress any Evidence Obtained as a Result of any Illegal Searches or Seizures [ECF No. 25] is **DENIED**; and

4. Defendant's Motion to Suppress any Evidence Obtained as a Result of any Illegal Interrogations [ECF No. 26] is **DENIED**.


Dated: August 16, 2021                    s/ Eric C. Tostrud
                                          Eric C. Tostrud
                                          United States District Court